UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TYRONE HULL, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH, LLC, et al., <br><br> Defendants. | CAUSE NO. 3:21-CV-704-RLM-MGG |

OPINION AND ORDER

Tyrone Hull, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983, alleging the medical care he received at Westville Correctional Facility for an injured hand was constitutionally deficient. He attaches copies of his medical records and other documents to the complaint, which the court may consider when screening his complaint. *See* Fed. R. Civ. P. 10(c); Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted). The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Hull alleges that on March 17, 2020, he reinjured his right hand, which had been broken several years ago. ECF 1 at ¶¶ 2-3. By the end of the day, his hand

was swollen and he felt pain shooting up to his elbow. *Id.* at ¶ 4. The next morning, he submitted a healthcare request form (#751774), requesting to see the doctor. *Id.* at ¶ 5. The request stated:

> I need to see a doctor about the "nerve damage" on my hand! It's "num" it feels like a thousand needles is poking at it. At times when I try to do push-ups it "swells up" and it "burns" real bad! Also at times it locks up. You can also feel my knuckle [unintelligible] in the front of my hand. I really need a doctor please."

ECF 1-1 at 8.

LPN Rhonda Adkins examined Mr. Hull in sick call on March 26, and he told her that his pain was a 10 out of 10. *Id.* at ¶ 7. Mr. Hull asked to see the doctor as soon as possible due to his suspected nerve damage and severe pain. *Id.* at ¶ 8. Nurse Adkins told him that she couldn't schedule him to see the doctor; only the doctor can schedule such an appointment. *Id.* at ¶ 19. The medical records attached to the complaint confirm that he was seen for a complaint of "nerve damage" in his hand. ECF 1-1 at 22-23. Nurse Adkins noted: "[range of motion] to right hand [within normal limits] warm to touch. no swelling or discoloration noted. inability to make a complete fist. md to be notified. no new orders at this time." *Id.* at 23.

Mr. Hull submitted several healthcare request forms after that visit, stating that he needed to see the doctor and complaining that his requests weren't being timely answered. ECF 1 at ¶¶ 23-26. He was scheduled for another sick call on April 16, 2020. That visit was not completed. The medical records state: "aggressive with staff and threatening because dr. won't see him. sent back to cell." ECF 1-1 at 24. Mr. Hull disputes that he was aggressive, stating that at the visit he "clearly stated [that

2

he] wants, and needs to be seen by the Doctor" and that he "demanded to be given the proper medical attention." ECF 1 at ¶ 28.

Mr. Hull also takes issue with the refusal form Nurse Adkins filled out, contending it was fabricated. ECF 1 at ¶ 31. On that form, Nurse Adkins wrote, "[sick] call you requested but are now declining will not be rescheduled. You should keep your app't as requested." ECF 1-1 at 28. She signed it, along with a custody officer, who signed because Mr. Hull refused to. *Id.* Mr. Hull argues this form is inconsistent with the medical records that state he was seen and sent back to his cell. ECF 1 at ¶ 33.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done

3

so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). However,

> medical professionals are not required to provide *proper* medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one *proper* way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Id.* (quotation marks, citations, parenthesis, and brackets omitted; emphasis added).

This complaint doesn't state a claim upon which relief may be granted. Mr. Hull's only complaint about his medical care is that he never saw the doctor. Whether Mr. Hull's condition warranted treatment by the doctor instead of the nurse is a matter of professional judgment. Nothing in the complaint suggests that the decision for a nurse to provide treatment was a substantial departure from accepted professional judgment. In essence, Mr. Hull disagrees with the decision not to refer him to a doctor, but "a disagreement with medical professionals . . . does not state a cognizable Eighth Amendment claim . . . ." Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

Moreover, an inmate's refusal of care cuts off a medical professional's liability under the Eighth Amendment. Although he disputes that he refused care at the April 16 sick call visit, it is undisputed that he demanded to see a doctor instead of a nurse. Not following required procedures for medical care is the same as a refusal. *See* Cherry v. Berge, 98 F. App'x 513, 515 (7th Cir. 2004) (holding that defendants were not deliberately indifferent for withholding medication because prisoner's noncompliance with medication protocol was considered a refusal). Thus, the refusal form isn't contradicted by the medical records; demanding to see a doctor instead of a nurse is the same as refusing care. Mr. Hull can't justify his refusal based on his desire to see a doctor. "The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing." United States v. Rovetuso, 768 F.2d 809, 825 (7th Cir. 1985). Mr. Hull's only complaint about his treatment is based on the decision for him to see the nurse instead of the doctor. That isn't a basis for an Eighth Amendment claim.

Mr. Hull raises several other issues in the complaint that, even if his medical claim alleged an Eighth Amendment violation, couldn't proceed. First, he alleges that the medical director, Dorothy Livers, did not respond to his healthcare request forms within 24-72 hours as Wexford policy requires. A violation of prison policy or other state law doesn't give rise to a federal constitutional claim. Wozniak v. Adesida, 932 F.3d 1008, 1011 (7th Cir. 2019).

Second, Mr. Hull complains that Warden John Galipeau should be held liable for his healthcare issues because he merely passed his medical grievances onto

5

Director Livers instead of doing further investigation into his complaints. As a nonmedical staff, Warden Galipeau is entitled to rely on medical staff's judgment regarding whether medical care is being appropriately provided. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009); *see also* Miranda v. Cnty. of Lake, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention.").

Similarly, John Harvill's alleged involvement was limited to processing grievances. However, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011). "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428 (7th Cir. 2017). The complaint doesn't state a claim on which relief can be granted against John Harvill.

Finally, Mr. Hull sues Wexford, LLC, the private company that provided healthcare in the prison at the time the events in the complaint happened. His conclusory allegation of "systemic deficiencies in staff, polic[ies], and procedures" is insufficient to state a claim for municipal liability under § 1983. ECF 1 at ¶ 54. A private company performing a state function can be held liable to the same extent as

6

a municipal entity under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012). Corporate "liability exists only when execution of a [corporation's] policy or custom . . . inflicts the injury." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005) (quotation marks omitted). This complaint doesn't state a constitutional injury. But even if it did, Mr. Hull hasn't alleged facts from which it can be plausibly inferred that the medical staff's actions were due to anything but their individual professional judgment on the necessity of seeing a doctor, and not a policy or practice attributable to Wexford. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic v. Twombly, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Swanson v. Citibank, N.A., 614

7

F.3d 400, 403 (7th Cir. 2010) (emphasis in original). This complaint doesn't state a claim on which relief can be granted against Wexford.

This complaint does not state a claim for which relief can be granted. Mr. Hull may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Tyrone Hull until **October 27, 2021**, to file an amended complaint; and

(2) CAUTIONS Tyrone Hull if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on September 27, 2021

s/ Robert L. Miller, Jr.<br>
JUDGE<br>
UNITED STATES DISTRICT COURT

8